**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AUBURN RACQUET CLUB, INC.,**<br>**and JACK DRIMMER d/b/a PLEASURE**<br>**HILLS REAL ESTATE CO., LLC,**<br>individually and on behalf of all others<br>similarly situated,<br><br>**Plaintiffs,**<br><br>**PHILADELPHIA INDEMNITY**<br>**INSURANCE COMPANY,**<br><br>**Defendant.** | **Case No. 2:20-cv-02666** |

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFFS' CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(6)**

Jeffrey D. Grossman
Stradley Ronon Stevens & Young LLP
2600 One Commerce Square
Philadelphia, PA 19103
Telephone:  215.564.8000
Facsimile:  215.564-8120

Richard L. Fenton (admitted *pro hac vice*)
Dentons US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL  60606
Telephone:  312.876.8000
Facsimile:  312.876.7934

Jeffrey A. Zachman (admitted *pro hac vice*)
Dentons US LLP
303 Peachtree St., NE Suite 5300
Atlanta, GA  30308
Telephone:  404.527.4000
Facsimile:  404.527.4198

*Attorneys for Defendant,*
*Philadelphia Indemnity Insurance Company*

**TABLE OF CONTENTS**

I.      INTRODUCTION ...........................................................................................1

II.     FACTUAL BACKGROUND ........................................................................5

III.    LEGAL STANDARD ....................................................................................7

IV.     ARGUMENT .................................................................................................8

        A.      The Complaint Fails To Meet Rule 8's Pleading Requirements. ...........................8

        B.      The Complaint Otherwise Fails To State A Claim Under The Plain Terms
                Of The Policy And Must Be Dismissed Pursuant To Rule 12(b)(6). ..................10

                1.      The Virus Exclusion Applies. ........................................................10

                        a.      Plaintiffs' Conclusory Allegation That The Virus Exclusion
                                "Does Not Apply" To Plaintiffs' Loss Cannot Be
                                Considered. ....................................................................11

                        b.      Regulatory Estoppel Does Not Bar Application Of The Virus
                                Exclusion.......................................................................11

                        c.      Public Policy Does Not Bar Application Of The Virus
                                Exclusion.......................................................................15

                2.      The Complaint Fails To Assert *Facts* Establishing A "Direct
                        Physical Loss."...........................................................................16

                3.      The Civil Authority Coverage Does Not Apply Because Plaintiffs
                        Have Not Alleged Any Facts Related To That Coverage.........................17

                4.      Plaintiffs Is Not Entitled To A Declaratory Judgment...........................19

                        a.      Plaintiffs Have Not Alleged Any Likelihood Of Future Loss
                                And Cannot Maintain A Declaratory Judgment To
                                Determine Liability For A Prior Loss. ...........................19

                        b.      Plaintiffs' Declaratory Judgment Claim Would Not Resolve
                                The Dispute Between The Parties And Thus Seeks An
                                Advisory Opinion.............................................................20

V.      CONCLUSION............................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Corp. Soc. V. Valley Forge Ins. Co.*
465 F.3d at 837–38 (8th Cir. 2006)......................................................26

*Andela v. Admin. Office of U.S. Courts,*
569 F. App'x 80 (3d Cir. 2014) ......................................................20, 21

*Ashcroft v. Iqbal,*
129 S.Ct. 1937 (2009)..............................................................*passim*

*Ballentine v. United States,*
486 F.3d 806, 810 (3d Cir. 2007)......................................................8

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007).................................................................*passim*

*Bell v. Rothrock,*
No. 4:18-CV-02177, 2020 WL 1288484 (M.D. Pa. Jan. 30, 2020)....................11, 13

*Butta v. GEICO Cas. Co.,*
400 F. Supp. 3d 225 (E.D. Pa. 2019) ...................................................22

*Calderon v. Ashmus,*
523 U.S. 740, 118 S. Ct. 1694, 140 L. Ed. 2d 970 (1998)...........................4, 21, 22

*Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.,*
89 F.3d 976 (3d Cir. 1996).............................................................12

*Ciser v. Nestle Waters N. Am. Inc.,*
596 F. App'x 157 (3d Cir. 2015) ........................................................9

*Corliss v. O'Brien,*
200 F. App'x 80 (3d Cir. 2006) .......................................................4, 20

*Davis v. Family Court of Phila.,*
No. CV 14-6840, 2015 WL 10937416 (E.D. Pa. Feb. 20, 2015)...........................9

*Dickie Brennan & Co. v. Lexington Ins. Co.,*
636 F.3d 683 (5th Cir. 2011) ..........................................................19

*Hawkins v. Supreme Court of N.J.,*
174 F. App'x 683 (3d Cir. 2006) ......................................................20

*Hussey Copper, Ltd. v. Arrowood Indem. Co.*,
    391 F. App'x 207 (3d Cir. 2010) .................................................................12, 15

*Hussey Copper Ltd. v. Royal Ins. Agency of Am.*,
    No. 07-758, 2009 WL 2913959 (E.D. Pa. Sept. 9, 2009) ........................................12

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
    678 F.3d 235, 243 (3d Cir. 2012)..........................................................................12

*Jones v. Aetna Casualty & Surety Co.*,
    26 Cal. App. 4th 1717, 33 Cal. Rptr. 2d 291 (1st Dist. 1994) ...............................26

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*,
    187 Cal. App. 4th 766, 115 Cal. Rptr. 3d 27 (2010)..............................................17

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993)..................................................................................2

*Port Authority of N.Y. and N.J. v. Affiliated FM Ins. Co.*,
    311 F.3d 226 (3d Cir. 2002).....................................................................15, 17, 18

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
    344 U.S. 237, 73 S. Ct. 236, 97 L. Ed. 291 (1952)................................................21

*Riley v. Mut. Ins. Co. Ltd.*,
    805 F. App'x 143, 144 (3d Cir. 2020)....................................................................27

*Simon Wrecking Co., Inc. v. AIU Ins. Co.*,
    530 F. Supp. 2d 706 (E.D. Pa. 2008) ................................................................12, 15

*Source Food Tech*, 465 F.3d at 837–38 (8th Cir. 2006) .................................................4

*Spring Garden Assocs., L.P. v. Resolution Tr. Corp.*,
    860 F. Supp. 1070 (E.D. Pa. 1994), *aff'd*, 68 F.3d 457 (3d Cir. 1995)....................2

*Sunbeam Corp. v. Liberty Mut. Ins. Co.*,
    566 Pa. 494, 781 A.2d 1189 (2001) .......................................................................12

*Takeda Pharm. U.S.A., Inc. v. Spireas*,
    400 F. Supp. 3d 185 (E.D. Pa. 2019) ................................................................12, 15

**Statutes**

28 U.S.C. § 2201 ...........................................................................................................4

**Other Authorities**

*Black's Law Dictionary* (10th ed. 2014).......................................................................9

Federal Rules of Civil Procedure

Rule 8 ...................................................................................................................1, 2, 8, 10

Rule 8(a)(2) ...............................................................................................................................8

Rule 10(c) ..................................................................................................................................2

Rule 12(b)(1) ..........................................................................................................................12

Rule 12(b)(6) ....................................................................................................................*passim*

Rule 23 ......................................................................................................................................1

## I.  <u>INTRODUCTION</u>

On behalf of itself and a putative class, Plaintiffs Auburn Racquet Club Inc. ("Auburn") and Jack Drimmer ("Drimmer") (collectively, "Plaintiffs") seek coverage under a Commercial Lines insurance policy issued by Defendant, Philadelphia Indemnity Insurance Company ("PIIC") (Policy No. PHPK2018389, the "Policy", Compl. ¶ 14, Document 1-1[1]), providing property insurance coverage for Auburn's business premises (the "Covered Property").  (Complaint, Document 1, ¶¶ 6-8.)  Specifically, the Complaint alleges that PIIC improperly denied coverage for lost business income, extra expenses, and interruption by civil authority caused by the COVID-19 pandemic and related orders by government officials requiring the closure of non-essential businesses as a precaution to prevent further spread of the disease.  Count I seeks a declaration of rights finding coverage under the Policy, and Count II seeks breach of contract damages and attorney's fees, all on behalf of Plaintiffs and the putative class.  Plaintiffs' claims fail for multiple reasons.[2]

At the outset, the Complaint does not meet the *Twombly/Iqbal* pleading standard because it does not allege facts sufficient to state a plausible claim for relief under Rule 8, Fed.R.Civ.P. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-51 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-63 (2007).  Plaintiffs' Policy requires, among other things, "direct physical loss of or damage to" Plaintiffs' business premises (the "Covered Property"), as a prerequisite to Business Income and Extra Expense coverages.  Similarly, a prerequisite to Civil Authority coverage is the issuance of civil authority orders barring access to Plaintiffs' premises in response to "direct

---

[1] For ease of reference, PIIC will cite to the Policy by referring to the ECF page numbers found in the top right corner of Document 1-1.

[2] Together with this motion, PIIC is also filing an alternative motion to strike Plaintiffs' class allegations because Plaintiffs cannot meet the commonality, typicality, predominance or superiority requirements of Rule 23, Fed. R. Civ. P, as a matter of law.

physical loss or damage" to properties other than the Covered Property.  Although Plaintiffs' Complaint sets forth much about the COVID-19 pandemic and resulting emergency orders, Plaintiffs' Complaint is devoid of any facts establishing any actual physical loss or damage to any business premises anywhere, and contains no allegations that any insured property required repair or replacement of any kind.  All that appears are conclusory non-sequiturs asserting that issuance of gubernatorial orders closing businesses generally, or the supposedly "ubiquitous nature" of COVID-19, in some unexplained way constitutes "direct physical loss or damage." (Complaint, ¶¶ 48-51.) Those bald recitals are unsupported by any facts and are not sufficient to "nudge [Plaintiffs'] claims across the line from conceivable to plausible." The Complaint must therefore be dismissed.  *Twombly,* 540 U.S. at 555; Fed. R. Civ. P. 8.

The Complaint also fails to state a claim under Rule 12(b)(6) for at least three other reasons. First, Plaintiffs' claims are barred by the Policy's clear, unambiguous, and specific exclusion for any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" (the "Virus Exclusion"). (*See* Policy, at Document 1-1, at 105 of 274).[3]  Plaintiffs unquestionably claim "damage caused by or resulting from" a "virus" that induces "physical distress, illness or disease," and therefore Plaintiffs' claims fall squarely within the Virus Exclusion *Id.*  Plaintiffs' conclusory assertion that the Virus Exclusion "does not apply" in some unexplained way, (Compl. ¶¶ 53, 54), does not override the express and unambiguous Policy language providing that the Virus Exclusion "applies

---

[3] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c); *Spring Garden Assocs., L.P. v. Resolution Tr. Corp.*, 860 F. Supp. 1070, 1072 (E.D. Pa. 1994), *aff'd*, 68 F.3d 457 (3d Cir. 1995) ("A court may consider exhibits attached to a complaint without converting a motion to dismiss into a motion for summary judgment.") (referencing *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

to all coverage…forms or endorsements that cover business income, extra expense or action of civil authority." (Policy at 105 of 274.)

Plaintiffs' assertion that the Virus Exclusion should be negated under the doctrine of regulatory estoppel (Compl. ¶¶ 61-62) is similarly misplaced because Plaintiffs do not and cannot identify any position taken by PIIC that is inconsistent with any representations made to regulators during the approval of the Virus Exclusion.  The allegations of Plaintiffs' Complaint show that PIIC's position on coverage here is identical to the positions taken during the regulatory approval process.  Regulatory estoppel is thus inapplicable.

Next, Plaintiffs' claims fail because the losses they allege are not covered by the Policy even in the absence of the Virus Exclusion.  The Business Income and Extra Expense coverages both require that the insured establish "direct physical loss" to the insured premises.  To establish direct physical loss or damage under applicable law, Plaintiffs must show that the property suffered demonstrable, physical alteration.   The Complaint, however, fails to set forth any facts demonstrating that Plaintiffs' business premises suffered any physical alteration, impairment or damage.  Although the Complaint repeatedly parrots the phrase "direct physical loss," it does not specify the nature of any physical loss or damage, nor does it explain how the spread of an infectious disease throughout the United States would result in tangible physical loss or damage to Plaintiffs' business premises.  Similarly, Civil Authority Coverage requires that access to Plaintiffs' premises be prohibited by civil authorities in response to dangerous physical conditions as a result of "direct physical loss of or damage to" other properties outside Plaintiffs' insured premises.   (*See* Policy at 148 of 274.)  The Complaint contains no allegations establishing "direct physical loss of or damage to" any other structures.  Moreover, the governmental orders closing businesses to the public generally were in response to the pandemic and to control further spread

of the disease, not in response to any physical damage to property.  So, Plaintiffs' claims fail as a matter of law.

Finally, Plaintiffs have established no basis on which to obtain declaratory relief.  The Complaint seeks a declaration of legal rights based on abstract assertions that Plaintiffs suffered unspecified physical loss or damage at some time *in the past*.  But "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct…Nor is declaratory judgment meant simply to proclaim that one party is liable to another."  *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006).  For that reason alone, Plaintiffs' claim for declaratory judgment is barred.  Declaratory relief also is inappropriate because the declaration of "coverage" Plaintiffs seek would not resolve the dispute between the parties.  Any such declaration would still require further proceedings to determine the precise losses that are covered under the Policy and the amounts, if any, that are due and owing. *See Calderon v. Ashmus*, 523 U.S. 740, 748, 118 S. Ct. 1694, 1699, 140 L. Ed. 2d 970 (1998) (plaintiff cannot "seek[ ] by declaratory judgment to litigate a single issue in a dispute that must await another lawsuit for complete resolution.").  Accordingly, and the other insufficiencies in the Complaint notwithstanding, Count I for declaratory relief should be denied under 28 U.S.C. § 2201.

Separate from these insufficiencies, Plaintiff Drimmer is not a named insured under the Commercial Property Coverage part of the Policy pursuant to which Plaintiff seeks coverage.  (*See* Policy at 22 of 274, "Commercial Coverage Part Declarations").  Drimmer therefore lacks standing to bring this suit.

In sum, and sympathetic though Plaintiffs' circumstances may be, the allegations of the Complaint simply do not establish a plausible basis for relief in the face of the clear and

unambiguous provisions of the Policy.  Accordingly, the Complaint fails to state a claim and should be dismissed in its entirety.

## II.   FACTUAL BACKGROUND

Plaintiffs operate a racquet and fitness club in Auburn, California.  (Compl. ¶ 8.)  Plaintiffs commenced this action on June 8, 2020, on behalf of themselves and a putative class of insureds.[4] (Compl. ¶¶ 1, 5.)  Plaintiffs seek coverage under a Commercial Lines policy providing property coverage for Plaintiffs' business located at 1255 Racquet Club Drive, Auburn, California.  (*See* Policy.)  The Policy period extends from August 1, 2019 through August 1, 2020.  (*Id*. at 12 of 274.)

The Policy includes coverage for certain lost business income ("Business Income Coverage") if Plaintiffs' operations are suspended as a result of "direct physical loss" the insured premises.  Specifically, it provides Business Income Coverage for lost net income incurred during the "Period of Restoration"[5] "when your covered building or business personal property listed on the Declarations is damaged by a **Covered Cause of Loss.**" (*Id.* at 148 of 274 (emphasis added).) As Plaintiffs allege and as set forth in the Policy, "Covered Causes of Loss" are defined as risks

---

[4] Plaintiff defines the potential class as:

> All policyholders in the United States who purchased commercial property coverage, including business or interruption income (and extra expense) coverage from Defendant and who have been denied coverage under their policy for lost business income after being ordered by a governmental entity, in response to the COVID-19 pandemic, to shut down or otherwise curtail or limit in any way their business operations.

(Compl. ¶ 65.)

[5] "Period of Restoration" is defined in the Policy as the period of time that "(1) Begins with the date of physical loss or damage caused by or resulting from any Covered Cause of Loss; and (2) Ends on the date when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality."  (Policy at 149 of 274.)

of "direct *physical loss"* unless otherwise excluded or limited under the Policy.  (Compl. ¶ 18, emphasis added; *see also* Policy at 109 of 274.)

Similarly, the Policy provides coverage for "Extra Expenses" incurred as a result of a direct physical loss ("Extra Expense Coverage") and defines "Extra Expense" as follows:

> Extra Expense means necessary expenses you incur during the 'Period of Restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a **Covered Cause of Loss**.

*(Id.* at 149 of 274 (emphasis added).)

Plaintiffs also rely on a portion of the Policy that provides additional coverage related to the action of a civil authority ("Civil Authority Coverage") (*see* Compl. ¶ 25).  That language provides coverage "for the actual loss of 'Business Income' you sustain and necessary 'Extra Expense' caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any **Covered Cause of Loss**."  (Policy at 148 of 274 (emphasis added).)

Thus, both the Business Expense Coverage and Extra Expense Coverage require Plaintiffs to establish "direct physical loss of or damage to" the insured premises.  Similarly, the Civil Authority Coverage requires Plaintiffs to establish that a civil authority barred access to Plaintiffs' premises in response to direct physical loss or damage to other property.  (*Id.* at 148 of 274.)  So, in all cases, direct *physical* loss of or damage to property is a prerequisite to coverage.

All of the above coverages are also subject to a Virus Exclusion that excludes coverage for any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Policy at 105 of 274.)  The Policy also includes a conspicuous notice highlighting the significance of the Virus Exclusion and encouraged Plaintiffs to read all the Policy endorsements carefully.  (*Id.* at 21 of 274.)

Against that backdrop, Plaintiffs allege that COVID-19 has spread rapidly throughout the country and has been declared a pandemic by the World Health Organization. (Complaint ¶ 28.) Although Plaintiffs do not allege any actual contamination or illness at its business premises, Plaintiffs allege that the Governor of Pennsylvania and other public officials ordered closure of all non-essential or non-life-sustaining businesses in an effort to limit the spread of the disease, in part because "the contact and interaction necessarily incident to such businesses causes a heightened risk of the property being contaminated." (Complaint ¶ 39.) Plaintiffs claim that in response to the California Governor's orders, Plaintiffs closed its business on March 20, 2020 and gave notice of its claim to PIIC on March 31, 2020. *Id.* ¶¶ 32, 44.

PIIC denied Plaintiffs' claim in a letter dated March 20, 2020. Plaintiffs appended to the Complaint as Exhibit B only a Claim Summary, which does not provide a detailed explanation for the denial. (Compl., Exhibit B.)

Plaintiffs did not notify PIIC of any disagreement or bring any additional facts to PIIC's attention. Instead, Plaintiffs filed this class action seeking a declaratory judgment (Count I) that it is entitled to coverage under the Policy for the interruption to Plaintiffs' business and the associated business income lost as a result of the Covid-19 pandemic and resulting emergency orders by state and local authorities closing businesses to the public. (Compl. ¶¶ 74-86, Prayer for Relief, p. 18.) Plaintiffs also seek damages for breach of contract (Count II) as a result of PIIC's failure and refusal to provide coverage. (Compl. ¶¶ 87-94.)

## III.   LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Failure to plead sufficient facts to state a claim to relief that is "plausible on its face" warrants dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  It is a plaintiff's burden to show its "entitlement to relief" with more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

"A motion to dismiss for want of standing is ... properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)). A Court evaluating whether a party pleaded sufficient facts to establish standing applies the Rule 12(b)(6) standard for a motion to dismiss for failure to state a claim. *Id.*

Although a Rule 12(b)(6) motion to dismiss accepts the Complaint's well-pleaded factual allegations as true for purposes of the motion, the Court is not required to accept mere conclusions or "bare assertions … amounting to nothing more than a 'formulaic recitation' of the elements" of a claim. *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949, citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678.  Conclusory allegations are not entitled to the assumption of truth and must be disregarded. *Ciser v. Nestle Waters N. Am. Inc.*, 596 F. App'x 157, 163 (3d Cir. 2015); *Davis v. Family Court of Phila.*, No. CV 14-6840, 2015 WL 10937416, at *1, n.1 (E.D. Pa. Feb. 20, 2015).

Applying those standards here, and as more fully set forth below, Plaintiffs' Class Action Complaint must be dismissed for failure to state a claim.

## IV.   ARGUMENT

### A.   The Complaint Fails To Meet Rule 8's Pleading Requirements.

Although Plaintiffs seek coverage under a policy of property insurance that requires a "direct physical loss of or damage to" insured premises, Plaintiffs plead no facts describing any

physical change, alteration, or damage to the Covered Property.  Instead, the Complaint just repeatedly recites the naked phrase "direct physical loss" without explaining what that loss is or how either the pandemic or the governmental emergency orders that resulted could have (much less did) physically altered or damaged the Covered Property.  (Compl. ¶ 48) (asserting, again as a conclusion, that "Plaintiffs' Covered Property suffered 'direct physical loss or damage' due to the Governor of California's Order (and other local government orders) mandating that Plaintiffs discontinue its primary use…."); *id.* at ¶¶ 49, 50 ("the COVID-19 pandemic and the ubiquitous nature of the COVID-19 virus caused a direct physical loss of or damage to Plaintiffs' Covered Property"); *id*. at ¶¶ 49, 50 (asserting legal conclusion that  Plaintiffs suffered "direct physical loss" to its premises).  These threadbare conclusions are insufficient to state a claim.  *See Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964-65 (dismissing claim where allegations merely tracked conspiracy requirement); *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949, citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 ("bare assertions, much like the pleading of conspiracy in *Twombly*, amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim" cannot withstand Rule 12(b)(6) motion to dismiss).  No facts are alleged establishing any "direct physical loss of or damage to" Plaintiffs' respective properties, nor do Plaintiffs claim that any insured property required repair or replacement of any kind.

The *only* actual facts[6] set forth in the Complaint allege that Plaintiffs were forced to suspend their operations as a result of the pandemic and governmental closure orders.  (Compl. ¶¶ 32-37, 42, 44, 48.)   That, however, is not "direct physical loss or damage" to property.

---

[6] A fact is "[s]omething that actually exists" or "[a]n actual or alleged event or circumstance, as distinguished from its legal effect, consequence, or interpretation." *Black's Law Dictionary* (10th ed. 2014).

Accordingly, the Complaint sets forth no facts establishing "direct physical loss or damage" to the Covered Property necessary to trigger Business Income or Extra Expense Coverages. And Plaintiffs plead no facts establishing the government orders were in response to any physical loss of or damage to other property, which is prerequisite to any Civil Authority Coverage. *See Source Food Tech*, 465 F.3d at 837–38 (8th Cir. 2006) (insured did not suffer "direct physical loss" where government prohibited access to its property, reasoning that although plaintiff lost access to property, the property was not damaged in any way). So, no facts are pleaded that would establish a plausible claim for relief under the Policy as required under Rule 8. *Twombly* and *Iqbal* therefore control and the Complaint must be dismissed.

**B.**      **The Complaint Otherwise Fails To State A Claim Under The Plain Terms Of The Policy And Must Be Dismissed Pursuant To Rule 12(b)(6).**

Quite apart from the Complaint's Rule 8 deficiencies, the Complaint otherwise fails to state a claim on which relief can be granted and must be dismissed under Rule 12(b)(6).

**1.**      **The Virus Exclusion Applies.**

As an initial matter, the Policy contains a clear and unequivocal Virus Exclusion excluding any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Policy at 105 of 274.) The Policy also includes a notice highlighting the significance of the Virus Exclusion and encouraging Plaintiffs to read all the Policy endorsements carefully. (*Id.* at 21 of 274.) To the extent Plaintiffs have alleged any facts regarding its alleged loss, that loss clearly results from a "virus . . . that induces or is capable of inducing physical distress, illness or disease." (*Id.* at 105 of 274.) Thus, on its face, the Virus Exclusion bars Plaintiffs' claim for declaratory judgment.

> a.    Plaintiffs' Conclusory Allegation That The Virus Exclusion "Does
>        Not Apply" To Plaintiffs' Loss Cannot Be Considered.

Notwithstanding the clear and unambiguous language of the Virus Exclusion, Plaintiffs

baldly allege that it somehow does not apply.  (Compl. ¶¶ 53, 54.)  That conclusory legal assertion

lacks any factual support and is contradicted by the plain terms of the Policy and the unambiguous

language of the exclusion.  Thus, the Court cannot consider it in ruling on a motion to dismiss.

*See Bell v. Rothrock*, No. 4:18-CV-02177, 2020 WL 1288484, at *3 (M.D. Pa. Jan. 30, 2020),

report and recommendation adopted, No. 4:18-CV-02177, 2020 WL 1244595 (M.D. Pa. Mar. 16,

2020) ("Nor is [the Court] required to credit factual allegations contradicted by indisputably

authentic documents on which the complaint relies"); *Iqbal, supra,* 556 U.S. at 678, 129 S.Ct. at

1949.  Accordingly, and even taking the well pleaded facts of the Complaint as true, Plaintiffs'

claim is barred by the Virus Exclusion and must be dismissed under Rule 12(b)(6).

> b.    Regulatory Estoppel Does Not Bar Application Of The Virus
>        Exclusion.

Plaintiffs also assert that the Virus Exclusion is unenforceable under the doctrine of

regulatory estoppel.  The allegations in the Complaint, however, belie that assertion.

The essence of regulatory estoppel is a change in a party's legal position that is inconsistent

with the position previously taken in front of a regulatory body:

> In essence, the [regulatory estoppel] doctrine prohibits parties from
> switching legal positions to suit their own ends. Thus, having represented
> to the insurance department, a regulatory agency, that the new language
> in the policies . . . did not involve a significant decrease in coverage from
> the prior language, the insurance industry will not be heard to assert the
> opposite position when claims are made by the insured policyholders.

*Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 566 Pa. 494, 500, 781 A.2d 1189, 1192 (2001).  To

establish regulatory estoppel, Plaintiffs must show that a party: (1) made a statement to a regulatory

agency; (2) the regulatory agency relied upon the statement when deciding the issue presented to

it; and (3) the party subsequently adopted a litigation position opposite to the one it presented to the regulatory agency. *Simon Wrecking Co., Inc. v. AIU Ins. Co.*, 530 F. Supp. 2d 706, 714 (E.D. Pa. 2008) (citing *Sunbeam Corp.*, 781 A.2d at 1189); *Hussey Copper Ltd. v. Royal Ins. Agency of Am.*, No. 07-758, 2009 WL 2913959, at *1 (E.D. Pa. Sept. 9, 2009). Specifically, Plaintiffs must show that PIIC took a position that "*directly contradict[s]*" the position it takes now. *Takeda Pharm. U.S.A., Inc. v. Spireas*, 400 F. Supp. 3d 185, 207 (E.D. Pa. 2019) (emphasis added). "An industry that makes representations to a regulatory agency to win agency approval will not be heard to assert the opposite position when claims are made by [litigants such as] insured policyholders." *Hussey Copper, Ltd. v. Arrowood Indem. Co.*, 391 F. App'x 207, 211 (3d Cir. 2010); *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 89 F.3d 976, 992 (3d Cir. 1996) (regulatory estoppel applied where insurer sought to give language different meaning than the meaning previously proffered to regulators).

There is no allegation that PIIC itself made any representations to the Department of Insurance regarding the effect of the Virus Exclusion. Plaintiffs apparently assume that PIIC can be estopped as a result of ISO's representations to regulators because PIIC utilizes the ISO form virus exclusion.[7] This Court need not address whether regulatory estoppel can be applied vicariously, however, because the Complaint itself demonstrates that PIIC's position here is *entirely* consistent with ISO's regulatory submissions and that the doctrine of regulatory estoppel does not apply in any event.

---

[7] ISO is the Insurance Services Office, Inc. According to the Complaint, ISO and the American Association of Insurance Services ("AAIS") represented hundreds of insurance carriers in seeking approval from State insurance regulators for the adoption of the Virus Exclusion. (Complaint ¶ 56.) PIIC's Policy utilizes the ISO Virus Exclusion Form. (Policy at 105 of 274.)

Plaintiffs' Complaint cites to and relies upon an ISO Circular[8] published in 2006 that includes the 2006 ISO regulatory filing for approval of the Virus Exclusion.  ISO's position in that filing is *identical* to the coverage position PIIC takes here.  Specifically, the ISO Regulatory filing states:

> While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage and to create sources of recovery for such losses, contrary to policy intent.
>
> In light of these concerns, we are presenting an exclusion relating to contamination by disease-causing viruses or bacteria or other disease-causing microorganisms.
>
> ****
>
> ***The amendatory endorsement presented in this filing states that there is no coverage for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease. The exclusion (which is set forth in Paragraph B of the endorsement) applies to property damage, time element and all other coverages***; introductory Paragraph A prominently makes that point. Paragraphs C and D serve to avoid overlap with other exclusions, and Paragraph E emphasizes that other policy exclusions may still apply.

(ISO Circular, attached hereto as Exhibit 1 (emphasis added).)

Thus, ISO fully disclosed that in the event of a pandemic or similar event, insureds might attempt to expand coverage under existing policies, and that the Virus Exclusion was being proffered to make clear that there was no coverage for virus-related losses.  That position is on all

---

[8] The ISO Circular is referenced in and quoted in Plaintiffs' Complaint.  (*See* Compl. ¶ 56-60).  In deciding a motion to dismiss, "the Court may consider . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Bell*, 2020 WL 1288484, at *3.  Here, the Complaint incorporates ISO's submission to Pennsylvania regulators and relies on that submission to support Plaintiff's estoppel claim. The Court may thus consider the written submission when deciding this Motion.  *Id.*

fours with PIIC's position here.  So, even taking the facts pleaded in Plaintiffs' Complaint as true,

PIIC's position with respect to coverage under the Policy is identical to the position ISO took when

it submitted the Virus Endorsement for approval.

Plaintiffs nevertheless point to a snippet in ISO's submission stating that "property policies

have not been a source of recovery for losses involving contamination by disease-causing agents."

(Compl. ¶ 60.)   Plaintiffs claim this representation was "false."[9]   *Id.*   But Plaintiffs cite no

controlling authority establishing otherwise, nor has PIIC been able to find any body of then-

applicable case law or regulatory authority holding that property insurance generally covers

business losses arising out of viral outbreaks or pandemics.[10]

---

[9] Although Plaintiffs focus on a single sentence of the ISO submission, the Complaint does not claim that the submission read as a whole was in any way misleading.  For example, Plaintiffs' Complaint fails to mention that the submission also contains the following statements:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses.

> ****

> Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

(ISO Circular, attached hereto as Exhibit 1.)  So, read as a whole, the ISO submission plainly disclosed that virus-related claims could arguably be made under then-existing policies and that whether viral contamination could in some circumstances constitute actual property damage "may be a point of disagreement in a particular case." There is nothing even arguably misleading about that, and the exclusion was proffered expressly for the purpose of eliminating any doubt.  *Id.*

[10] On the contrary, the law as of submission of the virus exclusion appears to support the ISO statement.  Although it did not arise in the context of a pandemic , the Third Circuit in considering a similar claim involving asbestos contamination held that "[i]n ordinary parlance and widely

Even if ISO's statement about sources of recovery was arguably incorrect – and it was not – there still would be no regulatory estoppel.  To invoke regulatory estoppel, Plaintiffs must show that PIIC is taking a legal position *contrary* to the position previously taken before the regulatory body.  *Simon Wrecking Co., Inc., supra,* 530 F. Supp. 2d at 706.  Plaintiffs have identified no inconsistency – and have certainly alleged no "direct contradict[ion]" – between ISO's prior regulatory statements and PIIC's coverage position here.  Regulatory estoppel therefore does not apply. *See Takeda Pharm.*, 400 F. Supp. 3d at 207; *see also Hussey Copper, Ltd. v. Arrowood Indem. Co*., 391 F. App'x 207, 211 (3d Cir. 2010) (rejecting regulatory estoppel argument and reasoning that "ISO's statements were not so contrary to [defendant's] position that [defendant ] should be estopped from invoking the pollution exclusion here.").

Finally, even where otherwise applicable, regulatory estoppel does not void clear and unambiguous policy provisions or provide a basis for rescission.  It simply prevents a party from asserting a position in litigation contrary to that previously asserted before the regulatory agency. *Simon Wrecking Co., Inc., supra,* 530 F. Supp. 2d at 711.  Since the Complaint identifies no position currently being taken by PIIC that is in any way contrary the positions asserted in the ISO submission, there is nothing to "estop."

c.    <u>Public Policy Does Not Bar Application Of The Virus Exclusion.</u>

Finally, Plaintiffs conclusorily state that the Virus Exclusion is not enforceable as a matter of "public policy."  (Compl. ¶ 55).  The Complaint contains no facts establishing that the Virus Exclusion violates public policy and cites no authority suggesting that the exclusion runs afoul of

---

accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure." *Port Authority of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) (citing 10 Couch on Insurance § 148:46 (3d ed.1998)).  That decision was issued in 2002, just four years before ISO submitted the virus exclusion for approval.

any legislatively or judicially established policy of Pennsylvania, or any other jurisdiction. Plaintiffs cannot simply contrive some previously unheard of "policy" out of whole cloth simply because they do not like the exclusion's effect, nor can they invalidate the plain terms of the Policy with bald legal conclusions. *See Rothrock*, 2020 WL 1288484, at *3 (Court is not "required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies").

> ### 2. The Complaint Fails To Assert *Facts* Establishing A "Direct Physical Loss."

Even if the Virus Exclusion were absent, the Complaint still fails as a matter of law because Plaintiffs have not pled facts showing "direct physical loss or damage" to Plaintiffs' property which is prerequisite to Business Income or Extra Expense coverage under the Policy.

Specifically, the Policy provides that PIIC will only pay for Business Income or Extra Expenses "incurred with your covered building or business personal property listed on the Declarations is damaged by a **Covered Cause of Loss**" which must be a "**direct physical loss**." (Policy at 109 & 148 of 274, emphasis added.)  Thus, to establish coverage under the Business Income or Extra Expenses Coverage, Plaintiffs must plead *facts* showing it suffered a "direct physical loss."

To establish "physical damage" to property Plaintiffs must show "an actual change in the insured property . . . causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 780, 115 Cal. Rptr. 3d 27, 38 (2010) (internal quotations omitted); *see also Port Auth. of New York & New Jersey*, 311 F.3d at 235 ("The mere presence of asbestos, or the general threat of future damage from that presence, lacks the distinct and demonstrable character necessary for first-party insurance coverage"); "Physical" loss or damage, 10A Couch on Ins. § 148:46 ("The

requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property."). Moreover, "[p]hysical damage to a building as an entity by sources unnoticeable to the naked eye must meet a higher threshold." *Id.* The presence of a source "unnoticeable to the naked eye" – such as asbestos or, as here, the Coronavirus – can only satisfy the definition of physical damage "[w]hen the presence of large quantities" "make the structure uninhabitable and unusable." *Id.*

As discussed above, however, the Complaint is devoid of any well pleaded facts establishing any physical loss or damage to Plaintiffs' property. Beyond Plaintiffs' "threadbare assertions" of "physical loss of or damage to" property, the Complaint provides no description or details of the claimed "physical loss" or explanation of how the virus in any way caused a "demonstrable, physical alteration" at Plaintiffs' property. *See Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964-65 (dismissing claim where allegations merely tracked conspiracy requirement); *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949, citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 ("bare assertions … amount[ing] to nothing more than a 'formulaic recitation of the elements'" of a claim do not withstand Rule 12(b)(6) motion to dismiss). Accordingly, even taking the well pleaded facts of Plaintiffs' Complaint as true, it fails to state a claim.

3.      **The Civil Authority Coverage Does Not Apply Because Plaintiffs Have Not Alleged Any Facts Related To That Coverage.**

Mirroring similar requirements found in the Business Income and Extra Expense Coverage, the Civil Authority Coverage provides coverage "for the actual loss of 'Business Income' you sustain and necessary 'Extra Expense' caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the

described premises, caused by or resulting from any **Covered Cause of Loss**."  (Policy at 148 of 274 (emphasis added).)

Accordingly, to establish coverage, Plaintiffs must show "distinct, demonstrable, physical alteration" of property other that its own, resulting in an order from civil authority prohibiting access to the insured premises.  *See Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 685 (5th Cir. 2011) (interpreting an almost identical coverage provision and holding that "the action of civil authority prohibiting access to the described premises must be caused by direct physical loss of or damage to property other than at the described premises; and [] the loss or damage to property other than the described premises must be caused by or result from a covered cause of loss as set forth in the policy.").

Here, however, Plaintiffs have not alleged--even in conclusory fashion--any damage to property other than Plaintiffs'.  *See id.* (insured must show damage to property other than Plaintiffs' property).  Nor have Plaintiffs alleged, even in conclusory fashion, that "access to the area immediately surrounding the damaged property [was] prohibited by civil authority as a result of the damage."  *Id*.  Plaintiffs must allege *facts* establishing both of these elements to be entitled to Civil Authority Coverage.  *See Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65.  They have not done so and thus the Complaint fails to state a claim.

To the extent Plaintiffs rely on the single factual allegation discussed above--that state and local orders prohibited access to their business--that allegation does not entitle Plaintiffs to Civil Authority Coverage.  None of the orders upon which Plaintiffs rely were issued in response to dangerous conditions caused by actual physical damage to specific property outside Plaintiffs' racquet club.  (Policy at 148 of 274.)  Thus, even if the few facts alleged in the Complaint were

true, Plaintiffs would not be entitled to Civil Authority Coverage.  For that independent reason, the Complaint fails to state a claim for relief.

        **4.**      **<u>Plaintiffs Is Not Entitled To A Declaratory Judgment</u>**

           a.    <u>Plaintiffs Have Not Alleged Any Likelihood Of Future Loss And Cannot Maintain A Declaratory Judgment To Determine Liability For A Prior Loss.</u>

As discussed above, Plaintiffs conclusorily allege that they have suffered an unidentified "direct physical loss" caused by the pandemic and certain government orders.  Even if these allegations were supported by sufficient facts (they are not) Plaintiffs would not be entitled to the declaratory judgment sought in Count I of the Complaint.  "Declaratory judgment is inappropriate solely to adjudicate past conduct." *Corliss*, 200 F. App'x at 84.  It is not "meant simply to proclaim that one party is liable to another."  *Id.*; *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct"); *Hawkins v. Supreme Court of N.J.*, 174 F. App'x 683, 685 (3d Cir. 2006) (Plaintiff was not entitled to declaratory relief for claims based on past conduct).

Here, Plaintiffs allege that they suffered unspecified loss or losses as a result of prior government shutdown orders. *See e.g.,* (Compl. ¶ 48 (alleging Plaintiffs "*suffered* 'direct physical loss or damage' due to the Governor of California's Order (and other local governmental orders)); ¶ 49 (alternatively alleging that COVID-19 in general "*caused* a direct physical loss of or damage to Plaintiffs' Covered Property.") (emphasis added).)  These orders were issued in the past.  *See id.*; *see also id.* ¶ 32 (alleging order closing Plaintiffs' business issued on March 19, 2020).  And for that reason, Plaintiffs seek to recover damages (via its breach of contract claim) that it has allegedly *already* suffered.  *See id.* ¶ 91 (alleging Plaintiffs "suffered a covered loss under the Policy").  Plaintiffs do not allege, even in conclusory fashion, that they are likely to suffer any

similar injury in the future.  Instead, Plaintiffs simply seek a declaration proclaiming liability as a result of these prior orders.  *Andela*, 569 F. App'x at 83 ("Declaratory judgments are not meant simply to proclaim that one party is liable to another."); *see also* Compl. ¶¶ 79-81 (alleging that Plaintiffs have suffered a loss and seeking declaration that the loss is covered).  To the extent Plaintiffs have suffered any injury, Plaintiffs' remedy lies in its claim for breach of contract set forth in Count II.  Plaintiffs are not entitled to a separate declaratory judgment that PIIC is liable for the alleged damages it seeks to recover in Plaintiffs' breach of contract claim.  *Id*.  For that reason, Count I should be dismissed.

        b.    <u>Plaintiffs' Declaratory Judgment Claim Would Not Resolve The Dispute Between The Parties And Thus Seeks An Advisory Opinion.</u>

Independently, and unlike Plaintiffs' claim for breach of contract in Count II, Plaintiffs' declaratory judgment claim would not resolve the entire dispute between the parties.  It thus seeks nothing more than an advisory opinion as to liability.  The Declaratory Judgment Act "prevent[s] federal-court litigants from seeking by declaratory judgment to litigate a single issue in a dispute that must await another lawsuit for complete resolution."  *Calderon v. Ashmus*, 523 U.S. 740, 748 (1998); *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 246, 73 S. Ct. 236, 241, 97 L. Ed. 291 (1952) (One cannot bring a declaratory-judgment action just to resolve one isolated issue in a possible future controversy).

Here, Plaintiffs seek a declaration that there is coverage under the Policy for the interruption to its business and the associated lost business income.  (Compl. ¶¶ 86, Prayer for Relief, p. 18.)   But that declaration would not resolve the entire dispute between the parties.  Instead, it would merely address the liability portion of Plaintiffs' breach of contract claim, bifurcating that claim into liability and damages portions.  Plaintiffs cannot use the Declaratory Judgment Act to split its claim into liability and damages actions, or to "to gain a litigation

advantage by obtaining an advance ruling on an affirmative defense." *Calderon*, 523 U.S. at 748 (federal law "prevent[s] federal-court litigants from seeking by declaratory judgment to litigate a single issue in a dispute that must await another lawsuit for complete resolution."); *see also Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 235 (E.D. Pa. 2019) (rejecting declaratory judgment seeking declaration of coverage under insurance policy as duplicative of breach of contract action for breach of same policy).   For that independent reason, Count I of the Complaint should be dismissed.

C.      **Plaintiff Jack Drimmer Lacks Standing to Seek Coverage Under the Commercial Property Declarations.**

Plaintiff Jack Drimmer is not a named insured under the Commercial Property Coverage Part under which Plaintiffs seek coverage.  (*See* Policy at 22 of 274.)  A non-insured party cannot assert a breach of contract claim for coverage under an insurance policy when no pleaded facts establish the non-insured's standing to seek a declaration of coverage or assert a breach of contract claim. *See Am. Corp. Soc. v. Valley Forge Ins. Co.*, 424 F. App'x 86 (3d Cir. 2011) (corporation's principal lacked standing to bring suit against an insurer based on insurer's denial of insurance claim, "where policy applied solely to corporation and nothing in policy indicated that parties intended for principal to have personal right of enforcement."); *Jones v. Aetna Casualty & Surety Co.*, 26 Cal. App. 4th 1717, 33 Cal. Rptr. 2d 291 (1st Dist. 1994) (party who is not a coinsured or third-party beneficiary lacks standing to sue another's insurer even though party paid premium for insurance).

Here, although Drimmer is a named insured under the Business Auto Coverage part of the Policy (*see* Policy at 35 of 274 (Business Auto Declarations naming Drimmer as insured)), he is not an insured under the Commercial Property Coverage Declarations.  (*See* Policy at 22 of 274.) Plaintiffs pleaded no facts that otherwise establish Drimmer's standing to obtain a declaration

21

regarding the Commercial Property Coverage in the Policy. *See Riley v. Mut. Ins. Co. Ltd.*, 805 F. App'x 143, 144 (3d Cir. 2020) (holding non-insured lacked standing to bring breach of contract against insurance company based on its decision to deny a claim). Drimmer thus lacks standing to assert a claim against PIIC.

## V.    <u>CONCLUSION</u>

For all the reasons set forth above, the Complaint should be dismissed in its entirety.

Respectfully,

/s/ Jeffrey D. Grossman
Jeffrey D. Grossman
Stradley Ronon Stevens & Young LLP
2600 One Commerce Square
Philadelphia, PA 19103
Telephone:  215.564.8000
Facsimile:  215.564-8120

Richard L. Fenton (admitted *pro hac vice*)
Dentons US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL  60606
Telephone:  312.876.8000
Facsimile:  312.876.7934

Jeffrey A. Zachman (admitted *pro hac vice*)
Dentons US LLP
303 Peachtree St., NE Suite 5300
Atlanta, GA  30308
Telephone:  404.527.4000
Facsimile:  404.527.4198

*Attorneys for Defendant,*
*Philadelphia Indemnity Insurance Company*

Dated:  July 2, 2020